USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___6/4/21_____

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------X
MATTEL, INC.,                        :
                                     :
                 Plaintiff,          :
                                     :        **21 Civ. 2333(VM)**
        -against-                    :           **ORDER**
                                     :
THE ENTITIES DOING BUSINESS AS       :
UNICORN ELEMENT AT THE URL           :
UNICORNELEMENT.NET, et al.,          :
                                     :
                 Defendants.         :
---------------------------------X

**VICTOR MARRERO, U.S.D.J.:**

Plaintiff Mattel, Inc. ("Mattel") brings this action against (a) the entities doing business as Unicorn Element at the URL www.unicornelement.net ("Unicorn Element"); (b) the entities doing business as the PayPal, Inc. ("PayPal") merchant 黄琼 (the "PayPal Merchant"); (c) the entities doing business using the email address Chris_Wong601@yahoo.com ("Chris_Wong601@yahoo.com"); (d) the entities doing business on amazon.com under the brand name Zita Element, under the store name Zita Element, and/or under the business name Yang Liuhui (collectively, "Zita Element"); (e) the entities doing business on amazon.com under the brand name Ecore Fun, under the store name EC2Toy, and/or under the business name Huang Qiong (collectively, "Ecore Fun"); (f) EMMS Trading GmbH ("EMMS"); (g) Zhijian Li ("Li"); (h) Yang Liuhui ("Liuhui"); and (i) Huang Qiong ("Qiong") (collectively, "Defendants")

1

alleging that Defendants infringed Mattel's registered trademarks and copyrighted works related to Barbie dolls. (See "Complaint," Dkt. No. 9.) On April 17, 2021, Mattel filed an Amended Complaint. (See "Amended Complaint," Dkt. No. 33.)

Mattel brings trademark claims against Defendants Unicorn Element, the PayPal Merchant, Chris_Wong601@yahoo.com, Ecore Fun, Li, and Qiong, (collectively, the "Trademark Defendants"). (Id. ¶ 28.) Mattel brings copyright claims against Unicorn Element, the PayPal Merchant, Chris_Wong601@yahoo.com, Zita Element, EMMS, Li, Liuhui, and Qiong (collectively, the "Copyright Defendants"). (Id. ¶ 31.) Now before the Court is Mattel's Motion for Attachment. (See "Motion," Dkt. No. 22.) For the reasons set forth below, the Motion is GRANTED.

## I.  **BACKGROUND**

A.  FACTUAL BACKGROUND[1]

Mattel manufactures consumer products including toys, games, and other playthings. As relevant to this Motion, Mattel manufactures and sells dolls, doll clothes, and doll accessories, which it advertises and distributes under the mark "BARBIE" (the "Barbie Mark"). Defendants are various

---

[1] Except as otherwise noted, the factual background derives from the Amended Complaint and the facts pleaded therein. Except when specifically quoted, no further citation will be made to the Amended Complaint or the documents referred to therein.

persons and/or companies engaged in the sale and distribution of doll clothes and accessories.

The Barbie Mark is registered on the Principal Register of the U.S. Patent & Trademark Office as No. 3,287,023 (the ("Barbie Registration"). Mattel has used the Barbie Mark in connection with the sale of doll clothing and accessories since at least 1960. Mattel alleges that the Barbie Mark is inherently distinctive and intrinsic to the goods Mattel sells. Similarly, Mattel alleges that the Barbie Mark is famous throughout the United States, it signals that Mattel is the source of the products, and the general public associates the Barbie Mark with high-quality products.

Mattel uses collections of illustrations in connection with the marketing and sale of certain of its Barbie products. As relevant to this action, one such collection, "Barbie A Fashion Fairytale Fall 2010 Entertainment Style Guide" (the "Style Guide") contains a unique illustration of a Barbie doll (the "Barbie Illustration"). Mattel registered the copyright in the Style Guide, including the Barbie Illustration, under Copyright Registration Number VA 1-843-492.

Mattel alleges that Defendants, without license or permission, have used both the Barbie Mark and Barbie Illustration in connection with the advertising and sale of

products. Mattel further alleges that this infringement was either intentional or reckless.

On March 17, 2021, Mattel filed under seal (1) the Complaint alleging Trademark Infringement, Trademark Counterfeiting, False Designation of Origin, Trademark Dilution, and Copyright Infringement; (2) a proposed Temporary Restraining Order ("TRO") restraining Defendants from removing funds from certain accounts at Amazon and PayPal; and (3) the present Motion for prejudgment attachment. That same day, the Court entered the TRO. (See Dkt. No. 15.) After the temporary order of attachment was effectuated and service on Defendants was made, the Court unsealed this matter.[2] (See Dkt. No. 4.) On April 29, 2021, Defendants filed an opposition to the present Motion. (See "Opposition," Dkt. No. 30.) On May 12, 2021, Mattel filed a reply brief in support of the Motion. (See "Reply," Dkt. No. 31.)

B.    THE PARTIES' ARGUMENTS

Mattel argues that it has satisfied all the statutory prerequisites for prejudgment attachment and that the Court should exercise its discretion to impose such remedy. Mattel argues it has demonstrated a likelihood of success on its

---

[2] The Court is aware that Defendants may at some further point contest whether proper service was made and reserves judgment on such arguments until they are properly before the Court.

trademark claims because the Trademark Defendants have used Mattel's validly held trademark -- the Barbie Mark -- in the promotion and sale of the Trademark Defendants' doll clothing and accessories. Similarly, Mattel argues that it has demonstrated a likelihood of success on its copyright claims because the Copyright Defendants have used Mattel's validly held copyrighted work -- the Barbie Illustration -- in the promotion and sale of the Coyright Defendants' products.

Defendants respond that Mattel has not demonstrated a likelihood of success on the merits because for both claims Defendants have demonstrated "fair use" of the protected intellectual property. As to trademark, the Trademark Defendants argue that they have used the potentially infringing term other than as a trademark, in a descriptive way, and in good faith. As to copyright, the Copyright Defendants argue that they have transformed the copyrighted work and have so minimally copied it such that they have not inhibited the market for reproduction.

## II. LEGAL STANDARD

Under Rule 64 of the Federal Rules of Civil Procedure, "every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment." Fed. R. Civ. P. 64(a). Under New York law, "[a]n order of

attachment may be granted in any action . . . where the plaintiff has demanded and would be entitled . . . to a money judgment against one or more defendants, when . . . the defendant is a nondomiciliary residing without the state, or is a foreign corporation not qualified to do business in the state." N.Y. C.P.L.R. § 6201 ("Section 6201").

To prevail on a motion for attachment, the plaintiff must also "show by affidavit and such other written evidence as may be submitted, that there is a cause of action, that it is probable that the plaintiff will succeed on the merits . . . and that the amount demanded from the defendants exceeds all counter-claims known to the plaintiff." Id. § 6212 ("Section 6212"). If the plaintiff can meet the requirements under New York law, a court is permitted, but not required, to issue an order of attachment. A court may exercise its discretion not to issue an attachment if it concludes that an attachment is not necessary "to obtain quasi in rem jurisdiction of the property on non-resident defendants [or] provide security for potential judgments." Capital Ventures Int'l v. Republic of Argentina, 443 F.3d 214, 221 (2d Cir. 2006).

### III. DISCUSSION

The parties agree that certain of the statutory requirements for attachment under Sections 6201 and 6212 have

6

been met here. First, there is no dispute that Mattel has a cognizable cause of action. Second, Defendants are not residents of New York. Third, Defendants have no counterclaim. Defendants also do not dispute that Mattel has adequately demonstrated a need for prejudgment attachment to provide security for a potential judgment. The parties do, however, dispute whether Mattel has demonstrated a likelihood of success on the merits of its claims.

A.   <u>LIKELIHOOD OF SUCCESS ON THE MERITS</u>

Probability of success on the merits for purposes of an order of attachment requires that the moving party demonstrate that it is more likely than not that it will succeed on its claims; the movant must show proof stronger than that required to make a prima facie case. <u>See</u> <u>Merrill Lynch, Pierce, Fenner & Smith Inc. v. Baninvensa Capital Mkts., Ltd.</u>, No. 94 Civ. 2778, 1995 WL 380129, at *1 (S.D.N.Y. June 26, 1995); <u>Donaldson Lufkin & Jenrette Secs. Corp. v. Burgess</u>, No. 92 Civ. 1174, 1992 WL 47980, at *1 (S.D.N.Y. Mar. 2, 1992); <u>Perrotta v. Giannoccaro</u>, 532 N.Y.S.2d 998, 1000 (Sup. Ct. 1988) (noting that the showing is comparable to that required when evaluating a preliminary injunction, "a clear showing of likelihood of ultimate success on the merits").

1.   <u>Trademark Claims</u>

Under the Lanham Act, a plaintiff alleging trademark infringement must demonstrate that (1) "it has a valid mark that is entitled to protection" and that (2) the defendant's "actions are likely to cause confusion with [that] mark." The Sports Auth., Inc. v. Prime Hosp. Corp., 89 F.3d 955, 960 (2d Cir. 1996); see also Tiffany & Co. v. Costco Wholesale Corp., 971 F.3d 74, 92 (2nd Cir. 2020). The parties do not dispute these basic elements of a trademark claim. Rather the Trademark Defendants argue that their use of the Barbie Mark was "fair use."

When a person "uses the words constituting [a registered] mark in a purely descriptive sense, this use may qualify as permissible fair use." Id. To demonstrate fair use, a defendant must establish that it used the allegedly infringing term "(1) other than as a mark; (2) in a descriptive sense; and (3) in good faith." JA Apparel Corp. v. Abboud, 568 F.3d 390, 400 (2d Cir. 2009); EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc., 228 F.3d 56, 64 (2d Cir. 2000). Here, the Court is not persuaded the Trademark Defendants have made a compelling case for fair use, and thus Mattel has demonstrated a likelihood of success on its trademark claims.

First, "a defendant uses a term as a mark when it employs it as a symbol to attract public attention or to identify and

distinguish goods or services and to indicate their source." *Tiffany*, 971 F.3d at 92. Here, the Court is persuaded that the Trademark Defendants have used the Barbie term as a mark. Specifically, the Court is persuaded that the Trademark Defendants used the term Barbie as a means by which to attract doll-accessory consumers to their Amazon page rather than Mattel's (or any other doll-accessory manufacturer's) page.

But as Mattel points out, there is simply no reason for the Trademark Defendants to use the term Barbie to describe the size doll their accessories seek to fit. That size is already included in the same bullet point:



Unique design by EC2TOY Doll Closet, there are more exciting doll item in our storefront, welcome to our store!

**5 Sets Barbie Clothes and Accessories for Barbie**
*All items are made by EC2TOY, they are made to fit the Barbie dolls & other similar sized dolls*
We try our best to provide a better and harmless gift for kids to enrich their daily life and enhance their thinking and practical ability!

Further, Mattel represented during oral argument that the term "Barbie" does not refer to a specific size doll. Accordingly, it would not be accurate for the Trademark Defendants to refer to their clothes as fitting a "Barbie doll" as a means of describing their products' use to consumers. Instead, as described above, the Court is persuaded that including the term "Barbie" in this instance seems to be an attempt to drive traffic to the Trademark Defendant's webpage.

Second, "[w]hether a phrase is descriptive refers to its tendency to describe the goods in question in a broad sense, including not only words that describe a characteristic of the goods such as size or quality, but also words or images that more abstractly identify some information about the goods in question." Tiffany, 971 F.3d at 93; Cosmetically Sealed Indus. v. Chesebrough-Pond's USA Co., 125 F.3d 28, 30 (2d Cir. 1997). Here again, the Court is not persuaded that the Trademark Defendants have used the term "Barbie" descriptively. For instance, the Trademark Defendants represent that they sell "5 Sets Barbie Clothes," which is not a necessarily a description of the products being sold,

but rather, a statement regarding the brand of the products. In addition, as discussed above, Mattel has represented that "Barbie" dolls come in various shapes and sizes, such that using the term "Barbie" in an omnibus fashion would not necessarily assist a consumer in understanding a product's use.

Finally, the Court is further not persuaded that the Trademark Defendants have used the term in good faith. "The inquiry into the defendant's good faith 'concerns the question whether the user of a mark intended to create consumer confusion as to source or sponsorship.'" JA Apparel, 568 F.3d at 401 (quoting EMI, 228 F.3d at 66-67). As noted above, the Trademark Defendants use the term "Barbie Clothes" at least one time in a manner that may cause reasonable consumers to believe their products are made by Mattel. Worse yet, the Trademark Defendants do not make clear that they are in no way affiliated with Mattel, either as a licensee of the Barbie Mark or as a subsidiary. As a result, consumers may perceive the presence of the Barbie Mark as indicative of Mattel's association with the quality of products being sold. While the Trademark Defendants argue that the product reviews of the Amazon page submitted to the Court shows little consumer confusion, the comments themselves are anecdotal at

best and shed no light on whether the consumers are aware of the product's true origin.

While it is ultimately possible that the Trademark Defendants could convince a jury that their use of the Barbie Mark constitutes "fair use," at this preliminary stage, the Court is not persuaded that the Trademark Defendants have made a sufficiently compelling case for fair use. Accordingly, the Court will grant Mattel's motion for attachment as to the Trademark Defendants.

2. Copyright Claims

The relevant copyrighted work here, the "Barbie Illustration," is as follows:



Copyrighted Barbie Artwork [ECF No. 9-3]

The Copyright Defendants' use of the Barbie Illustration is as follows:



**The only discernible use of the Copyrighted Barbie Artwork [ECF No. 24-5, p. 3]**







Defendant's Product - Girl Doll Closet          Defendant's use of the copyrighted artwork

Under the Copyright Act, a person who violates any of the exclusive rights of the owner of a valid copyright is liable for copyright infringement. See 17 U.S.C. § 106; Sony Corp. v. Universal City Studios, Inc., 464 U.S. 417, 433 (1984). The parties do not dispute that the Copyright

Defendants used the Barbie Illustration, a copyrighted work owned by Mattel, on the packaging of one of its products. And the parties do not appear to dispute that the Copyright Defendants' use falls within the exclusive rights guaranteed to Mattel by the statute. See Motion at 5; see also 17 U.S.C. § 106(1), (5). Instead, the Copyright Defendants argue that their use of the Barbie Illustration is not an infringement because it constitutes "fair use."

The "fair use of a copyrighted work . . . is not an infringement of copyright." 17 U.S.C. § 107. "In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include: (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work." Id.

"In fair use litigation, courts undertake a case-by-case analysis in which each factor is considered, and the results are weighed together, in light of the purposes of copyright." Fox News Network, LLC v. Tveyes, Inc., 883 F.3d 169, 176 (2d Cir. 2018). The four factors are not exclusive. Swatch Grp.

Mgmt. Servs. Ltd. v. Bloomberg L.P., 756 F.3d 73, 81 (2d Cir. 2014).

Taking each factor in turn:

a.   Purpose and Character of the Use

"The first statutory factor specifically instructs courts to consider whether copyrighted materials are used for a commercial purpose or for a nonprofit educational purpose, the former tending 'to weigh against a finding of fair use.'" TCA Television Corp. v. McCollum, 839 F.3d 168, 183 (2d Cir. 2016) (quoting Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 585 (1994)). There is no dispute that the Copyright Defendants' use of the Barbie Illustration is a commercial use. Thus, this factor weighs against finding fair use.

The Copyright Defendants seek to minimize the impact of this factor by arguing that their use of the Barbie Illustration is "highly transformative." (Opposition at 8.) Indeed "the more transformative the new work, the less will be the significance of other factors, like commercialism, that may weigh against a finding of fair use." Campbell, 510 U.S. at 579. But the Copyright Defendants ignore that with respect to a work being transformative, "the critical inquiry is whether the new work uses the copyrighted material itself for a purpose, or imbues it with a character, different from that for which it was created." TCA Television, 839 F.3d at

180. And here, the Copyright Defendants' use of the Barbie Illustration does not appear to be used for any particular purpose other than to sell doll-related merchandise. While this is slightly distinct from the purpose of the Style Guide, which was created to promote Mattel's movie, Barbie: A Fashion Fairytale (2010), ultimately both Mattel and the Copyright Defendants are using the Barbie Illustration to sell doll-related products. Thus, the Copyright Defendants' arguments related to transformative use are unpersuasive, and this factor weighs against finding fair use.

      b.   Nature of Copyrighted Work

The second statutory factor seeks to protect those works which "are closer to the core of intended copyright protection than others, with the consequence that fair use is more difficult to establish when the former works are copied." TCA Television, 839 F.3d at 184; see also Campbell, 510 U.S. at 586. But this factor "has rarely played a significant role in the determination of a fair use dispute." Fox News Network, 883 F.3d at 178 (quoting Authors Guild v. Google, Inc., 804 F.3d 202, 220 (2d Cir. 2015)). The Copyright Defendants present no substantial argument that the Barbie Illustration is undeserving of copyright attention. Thus, this factor also weighs against finding fair use, though it "is not ever likely to help much." Campbell, 510 U.S. at 586.

c.  Amount and Substantiality of Use

The third statutory factor asks whether "the amount and substantiality of the portion used in relation to the copyrighted work as a whole are reasonable in relation to the purpose of the copying." Campbell, 510 U.S. at 586. In assessing this factor, the Court considers "the quantity of the materials used," as well as "their quality and importance." Id. at 587. "The clear implication of the third factor is that a finding of fair use is more likely when small amounts, or less important passages, are copied than when the copying is extensive, or encompasses the most important parts of the original." Authors Guild, 804 F.3d at 221. "The obvious reason for this lies in the relationship between the third and the fourth factors," as the "larger the amount, or the more important the part, of the original that is copied, the greater the likelihood that the secondary work might serve as an effectively competing substitute for the original, and might therefore diminish the original rights holder's sales and profits." Id.

Weighing in the Copyright Defendants' favor is the fact that the Barbie Illustration only comprises a small portion of the entirety of the copyrighted work (the Style Guide). And the Copyright Defendants' use of the Barbie Illustration encompasses only a small portion of their products'

packaging. Thus, the Copyright Defendants have only copied a small portion of the copyrighted work.

But the Copyright Defendants copied the face of the Barbie Illustration -- the most important and identifying portion of the Barbie Illustration. Nor does there appear to be any justification for the Copyright Defendants to use any amount of the copyrighted work. See, e.g., Campbell, 510 U.S. at 586-87 (noting that the amount of the copyrighted work used should be "reasonable in relation to the purpose of the copying"). Because the Copyright Defendants have presented no convincing reason why copying the key portion of Mattel's illustration was necessary, the Court can infer that they did so in order to capitalize on Mattel's reputation. On balance, therefore, this factor likewise undercuts a finding of fair use.

d.   Effect on Potential Market

The fourth factor "focuses on whether the copy brings to the marketplace a competing substitute for the original, or its derivative, so as to deprive the rights holder of significant revenues because of the likelihood that potential purchasers may opt to acquire the copy in preference to the original." Google Books, 804 F.3d at 223; Fox News Network, 883 F.3d at 179. This factor requires the Court to assess both "the market harm caused by the particular actions of the

alleged infringer" in addition to the market harm that would result from "unrestricted and widespread conduct of the same sort." <u>Campbell</u>, 510 U.S. at 590; <u>Fox News Network</u>, 883 F.3d at 179.

Here also, the Court is persuaded that this factor weighs against a finding of fair use. In particular, if the Copyright Defendants, and other market participants, were to engage in "unrestricted or widespread conduct of the same sort," there is a clear market harm to Mattel. If doll clothing and accessory manufacturers were given free rein to copy Mattel's copyrighted work, without any apparent justification or license, Mattel would have little ability to protect its intellectual property or license the use of such images. Even allowing such a small amount of copying would likely open the door for manufacturers to use increasing amounts of Mattel's copyrighted materials. Mattel would likely be forced to bring lawsuit after lawsuit to protect its intellectual property.

The Court acknowledges that given the minimal amount of the original work copied, and the minimal amount it featured on the Copyright Defendants' products' packaging, it is unlikely that the Copyright Defendants' use in this specific case will completely "usurp the market for the copyrighted work." <u>TCA Television Corp. v. McCollum</u>, 151 F. Supp. 3d 419, 434 (S.D.N.Y. 2015). And the Court acknowledges that the

Copyright Defendants' product, a doll closet, is not the same as the copyrighted work, a collection of illustrations. But Mattel persuasively responds that it may put the Style Guide generally, or the Barbie Illustration specifically, to any number of uses in the future, including the marketing and promotion of doll accessories. Therefore, the Copyright Defendants' use nonetheless "impair[s] the value of Mattel's copyright." (See Reply at 9-10.)

For these reasons, allowing direct copying without justification, even in such a minimal fashion, would result in market harm to Mattel. Therefore, this factor weighs against a finding of fair use. And, given that each of the four factors in the fair-use analysis weighs against the Copyright Defendants, the Court is not persuaded that the Copyright Defendants have raised a compelling fair-use defense. Because Defendants have not otherwise challenged Mattel's likelihood of success on the merits, the Court will grant Mattel's Motion as to the Copyright Defendants.

## IV.  <u>ORDER</u>

For the reasons stated above, it is hereby

**ORDERED** that the motion by plaintiff Mattel, Inc. for prejudgment attachment pursuant to Rule 64 of the Federal Rules of Civil Procedure (<u>see</u> Dkt. No. 22) is **GRANTED** as to (a) the entities doing business as Unicorn Element at the URL

www.unicornelement.net ("Unicorn Element"); (b) the entities doing business as the PayPal, Inc. ("PayPal") merchant 黄琼 (the "PayPal Merchant"); (c) the entities doing business using the email address Chris_Wong601@yahoo.com ("Chris_Wong601@yahoo.com"); (d) the entities doing business on amazon.com under the brand name Zita Element, under the store name Zita Element, and/or under the business name Yang Liuhui (collectively, "Zita Element"); (e) the entities doing business on amazon.com under the brand name Ecore Fun, under the store name EC2Toy, and/or under the business name Huang Qiong (collectively, "Ecore Fun"); (f) EMMS Trading GmbH ("EMMS"); (g) Zhijian Li ("Li"); (h) Yang Liuhui ("Liuhui"); and (i) Huang Qiong ("Qiong").

**SO ORDERED.**

Dated: New York, New York
      04 June 2021

                                         Victor Marrero
                                         U.S.D.J.